## KINTZ *vs.* McNEAL & BRIGGS.

A judgment rendered by a justice of the peace, where the subject matter of the suit (e. g. the right to flow lands) was not within his jurisdiction, cannot operate as an estoppel in another suit between the same parties.

Where in a *writ of nuisance,* the plaintiffs counted for that the defendant had wrongfully, &c. erected and enlarged divers, to wit, three dams, three flumes, and three obstructions of great height, &c., and the jury who tried the issue found a special verdict setting forth that the defendant had raised the height of *one dam,* but saying nothing as to the other alleged nuisances; held a mis-trial; and a *venire de novo* was awarded.

The writ of nuisance is an obsolete proceeding, and is not to be encouraged ; and the court will not therefore, in such a proceeding, relax the strictness of the ancient practice.

WRIT of nuisance. The plaintiff declared that he was seized of certain lands in Lancaster, Erie county, describing them, through which ran the waters of the Cayuga creek, and that the defendants, on &c. wrongfully and unjustly built, raised and put up in and across the creek on and against and near the plaintiff's land divers, to wit, three dams, three flumes, and three obstructions of great height and width, to wit, of the height of five feet and of the width of four rods ; and cut, dug and made divers, to wit, three sluices, three trenches, and three cuts of great depth and width, &c. ; and kept and continued the said dams, flumes and obstructions, and the said sluices, trenches and cuts for a long space of time, &c. ; and thereby unlawfully

and wrongfully diverted and turned the water of the stream out of its natural channel, and upon the plaintiff's lands, &c. *Second count*, for widening, deepening and *enlarging* divers, to wit, three dams, three flumes and three obstructions; and widening, deepening and enlarging divers, to wit, three sluices, three trenches and three cuts; and thereby diverting the water, and causing it to set back and overflow the plaintiff's land, &c. Plea not guilty.

On the trial before DAYTON, C. Judge, at the Erie circuit in November, 1843, it appeared that the defendants had a right by grant from the plaintiff to maintain a dam at a certain height; and the plaintiff's complaint was that the defendants had raised the dam higher than they had a right to do, by the use of what were called flush boards, which were placed on the top of the permanent dam, by means of which the plaintiff's land had been flowed. Evidence was given on both sides as to the alleged increase in height of the dam, and its effects. The defendants moved for a nonsuit, on the ground that the declaration complained of the whole dam as a nuisance, whereas the proof showed that the defendants had a right to maintain the dam at a certain height. The motion was denied, and the defendants excepted.

The defendants offered to prove, that a short time before the commencement of this suit the plaintiff removed the flush boards from the top of the dam; upon which the defendants sued him for that act in trespass before a justice of the peace: the defendant in that action pleaded in justification that the boards were a nuisance, and therefore he had a right to remove them: issue was joined upon that plea; and on a trial before the justice the plaintiffs in that action obtained a judgment for their damages. The judge rejected the evidence, and the defendants excepted.

The evidence was, that the flush boards were usually kept on the dam. The defendants requested the judge to charge the jury, that the plaintiff was bound to show affirmatively by proof that the flush boards were on the dam at the time this suit was commenced; or that the jury must presume that they were not

on, and find accordingly. The judge refused so to charge, and the defendants excepted.

The jury found a special verdict, that the plaintiff was seized &c.; that the defendants had a right by grant from the plaintiff to erect and maintain a dam at &c. to the height of two feet four inches above the highest part of the rock bed on which the dam rests, and no higher; but that the defendants unlawfully &c. did raise, elevate and continue the dam to a greater height &c.; by means whereof the passage of the water was obstructed more than the defendants were entitled to obstruct it, and the dam set back, flowed, and raised the water upon the plaintiff's land more than the defendants could of right do &c. But whether upon the whole matter &c. Contingent damages to $25 were assessed.

*H. W. Rodgers*, for the plaintiff.

*M. Fillmore*, for the defendants.

*By the Court*, BRONSON, Ch. J. The second count was for enlarging the dam, and seems well enough adapted to the case which the plaintiff made on the trial. And although there was a variance between the proof and the first count, the judge was right in refusing to nonsuit the plaintiff. The judge was also right in refusing to charge the jury as the defendants requested. There was evidence from which the jury might find, that what were called the flush boards were on the dam at the time the action was commenced.

As to the former suit, the offer does not go far enough to show what particular question was tried before the justice. And besides, if the matter tried was the right of the defendants to flow the plaintiff's land, the justice exceeded his jurisdiction, and the judgment cannot operate as an estoppel.

There is nothing in the bill of exceptions; and the only remaining question is on the special verdict.

The special verdict is defective. It only finds part of the matters in issue. The jury have noticed one of the alleged

dams, without finding whether the defendants are or are not guilty in relation to the others: and they have said nothing whatever about the sluices, trenches and cuts of which the plaintiff complained; nor of their effects. They should have found one way or the other in relation to the whole issue. (*Co. Litt.* 227,. (*a*); *Finymore* v. *Sanky*, *Cro. Eliz.* 133; *Hooper* v. *Shepherd*, 2 *Str.* 1089; *Rosse's case*, 3 *Leon.* 94; *Rex* v. *Simons*, *Sayer*, 34, *per Denison*, *J.; Graves* v. *Morley*, 3 *Lev.* 55; *Cattle* v. *Andrews*, 3 *Salk.* 372.) There must be a *venire de novo.*

The remedies by assize of nuisance, and *quod permittat prosternere* have been out of use in England for two or three centuries; and this is probably the first instance in which a writ of nuisance was ever prosecuted in this state. How the parties have got on so far with this antiquated and very difficult proceeding, I am unable to say; but it has probably been by consent. The assize of nuisance is an existing remedy in Pennsylvania: but the court have found it necessary to disregard the ancient forms, and adapt the action to modern practice. (*Barnet* v. *Ihrie*, 17 *Serg. & Rawle*, 174.) It is doubtful whether we have any right to modernize this remedy; and I am disposed to adopt the language of Ch. J. Eyre, in *Jones* v. *Clay*, (1 *Bos. & Pull.* 191,) and say, if you will have a writ of nuisance, you must follow the course marked out by the law. His remark related to a writ of right, which had not become entirely obsolete; and yet the court would not suffer a departure from the ancient practice, even with the consent of both parties.

**New trial granted.**